THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SUMCO ECO-CONTRACTING,
LLC,
    *Plaintiff*,

    v.

ELLICOTT DREDGES, LLC,
    *Defendants*.

Civil Action No. ELH-20-2930

**MEMORANDUM OPINION**

In this business dispute, plaintiff SumCo Eco-Contracting, LLC ("SumCo") has sued defendant Ellicott Dredges, LLC ("Ellicott"), with regard to allegedly defective construction equipment purchased by plaintiff from defendant. ECF 1 (the "Complaint"). SumCo, a Massachusetts company that specializes in "ecological construction," contracted with Ellicott, a Maryland-based manufacturer of industrial dredges, to purchase a $3.1 million dredge. *Id.* ¶ 7; *see id.* ¶¶ 9-14. According to the Complaint, assembly of the dredge took longer than anticipated and, once assembled, it proved defective. *See id.* ¶¶ 16-20.

Jurisdiction is founded on diversity, pursuant to 28 U.S.C. § 1332. *Id.* ¶ 4. The Complaint contains four counts: breach of contract (Count I); breach of express warranty (Count II); negligent misrepresentation (Count III); and intentional misrepresentation (Count IV). *Id.* at 5-8. SumCo seeks damages as well as attorney's fees and costs. *Id.* at 9.

Ellicott has moved to dismiss the suit, pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b) (ECF 7), supported by a memorandum of law. ECF 7-1 (collectively, the "Motion"). Defendant has also submitted exhibits, including a copy of the written contract executed by the

parties. ECF 7-2 (the "Contract"). SumCo opposes the Motion. ECF 10. Ellicott replied. ECF 13.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I. Background[1]

During the summer of 2019, SumCo and Ellicott initiated discussions about plaintiff's purchase of an industrial dredge. ECF 1, ¶ 9. On September 18, 2019, SumCo wired a down payment of $500,000 to Ellicott for the purchase of an "Ellicott 'DRAGON' Series Cutter Suction Dredge." *Id.* ¶ 10; *see id.* ¶¶ 12, 15. The Contract for the sale was executed on October 10, 2019, with a purchase price of $3,141,149.00. *Id.* ¶¶ 10, 14; *see* ECF 7-2 at 4. The purchase price included $95,000 for delivery of the unassembled components of the dredge from Wisconsin to Pennsylvania (ECF 7-2 at 3), where they were to be received by SumCo and assembled at a dry dock. ECF 1, ¶ 12.

Of relevance here, the Contract specified that SumCo "shall supply at its expense (unless otherwise agreed in writing) all labor, material, equipment, tools, cranes, rigging, and facilities as required to perform the physical work of assembling or commissioning the [dredge]." ECF 7-2 at 5; *see id.* at 8. However, the total purchase price included fifteen days' worth of "[t]echnical support for supervision of assembly, start-up, and crew training" provided by Ellicott after delivery. *Id.* at 3.

---

[1] As discussed, *infra*, at this juncture I must "accept[] all well-pleaded allegations of the complaint as true and draw[] all reasonable inferences therefrom in favor of the plaintiff." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *see Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). The Court may also consider documents attached to the Complaint or the Motion, "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

The Contract included "General Terms And Conditions Of Sale" (the "Terms"), which contain multiple provisions pertinent to this dispute. ECF 7-2 at 6. The Terms refer to Ellicott as "Seller"; the dredge and its components as the "Equipment"; and the "provision of training, installation, maintenance and/or repair services" by Ellicott as the "Services." *See id.* According to ¶ 14 of the Terms, any dispute concerning the Contract shall be adjudicated under Maryland law by a state or federal court in Maryland. *Id.* at 7. And, the Contract permits the recovery of "reasonable attorneys' fees, costs and expenses" by the prevailing party in any legal dispute initiated to enforce the Contract. *Id.* at 7.

The Terms establish various limitations on liability and remedies available under the Contract. In particular, ¶ 6 addresses "Warranties." *Id.* It provides, in pertinent part, *id.* at 6-7 (capitalization in original):

> Seller warrants only that (i) the Equipment manufactured by Seller will conform to the description on the invoice issued by Seller . . . and (iii) the Equipment will be free from defects in material and workmanship for a period ending on the earlier of 4 months from startup or 5 months after date of shipment. . . . As to Services, Seller warrants only that Service will be performed in a professional and workmanlike manner. No agent, employee or representative of Seller has any authority to bind Seller to any affirmation, representation or warranty concerning the Equipment or Services. Any affirmation, representation or warranty made by an agent, employee or representative of Seller which is not expressly set forth in these Terms shall not in any way be enforceable against Seller. EXCEPT FOR THE WARRANTY SET FORTH IN THIS SECTION 6, SELLER MAKES NO WARRANTY WHATSOEVER REGARDING EQUIPMENT OR ANY SERVICES, WHETHER EXPRESS OR IMPLIED BY LAW, COURSE OF DEALING, OR PERFORMANCE, USAGE OF TRADE OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, WARRANTY (I) OF MERCHANTABILITY; (II) OF FITNESS FOR A PARTICULAR PURPOSE . . . .

Paragraph 7 is titled "Limitation On Remedies." *Id.* at 7. It states, in part, *id.* (emphasis added):

> Should the Equipment prove defective or if Services provided are not reasonably satisfactory, Purchaser's <u>exclusive and sole remedy</u> for any claim regarding the Equipment or Services shall be, in Seller's sole discretion, the repair or replacement of Equipment Ex-works Seller's plant if Seller is given prompt written notice of

any claimed defect within the warranty period and the Equipment is returned to Seller's plant for examination, charges prepaid, or, as to Services, the re-performance of Services.

Paragraph 8 is titled "Indemnification; Limitation On Liability." *Id.* It provides, in relevant part, *id.* (capitalization in original):

SELLER SHALL ONLY BE LIABLE FOR ITS OWN GROSS NEGLIGENCE OR INTENTIONAL MISCONDUCT. PURCHASER'S SOLE REMEDY FOR ANY LIABILITY OF SELLER OF ANY KIND SHALL BE LIMITED TO THE REMEDY SET FORTH IN SECTION 7 ABOVE. . . . NO ACTION MAY BE BROUGHT FOR ANY ALLEGED BREACH BY SELLER OF THESE TERMS, AN ORDER OR ANY CONTRACT BETWEEN PURCHASER AND SELLER REGARDING AN ORDER . . . MORE THAN 1 YEAR AFTER THE PURCHASE OF EQUIPMENT OR RENDERING OF SERVICE OCCURS.

Neither side discusses ¶ 12, which is titled "Waiver." *Id.* It states: "Any waiver by either Purchaser or Seller of a breach by the other of any provision of these Terms or any Contract shall not be deemed a waiver of future compliance therewith, and all provisions shall remain in full force and effect." *Id.*

Ellicott "represented" in "multiple correspondence [sic] and discussions" that "assembly of the dredge, after delivery to the dry-dock, would take five (5) days in a 'worst case' scenario." ECF 1, ¶ 16. Accordingly, "SumCo understood that five days was the maximum time required for assembly of the dredge." *Id.* SumCo's Complaint does not contain additional details regarding the timing or content of these alleged exchanges.

The dredge was delivered to SumCo at a dry-dock in Pennsylvania on November 21, 2019. *Id.* ¶ 17. Construing the Complaint liberally, it is reasonable to infer that Ellicott personnel were on site for the assembly, as required by the Contract. *See id.* ¶¶ 10, 35; ECF 10 at 7 (asserting that "an Ellicott technician" supervised the assembly); ECF 13 at 7-8 (seeming to agree that an Ellicott "technician" was present during assembly). Despite Ellicott's prior representation that assembly would require no more than five days, it lasted thirteen days, ending on December 3, 2019. *Id.*

¶ 18.  "As a result of the extended assembly period, SumCo incurred additional over-run costs exceeding $35,000, including additional dry-dock fees and labor costs."  *Id.* ¶ 19.

After assembly was complete, "the dredge experienced a series of mechanical failures." *Id.* ¶ 20.  To address these problems, over the "next few months" following assembly, SumCo "incurred over $490,000 in additional costs, including additional materials, dry-dock fees and labor costs." *Id.* ¶ 22.  Plaintiff alleges that during this general time period, it "notified Ellicott through written communication that SumCo was incurring costs related to the mechanical failures." *Id.* ¶ 23.

On February 6, 2020, "SumCo submitted a Commissioning Delays Claim to Ellicott seeking reimbursement for the additional costs Sumco incurred as a result of" the extended assembly and the dredge's mechanical failures.  *Id.* ¶ 24.  Ellicott "did not dispute the factual basis of SumCo's claim," but nevertheless "denied" it on the ground that SumCo was seeking "'consequential damages,'" which Ellicott asserted were barred under the Contract.  *Id.*  Neither side discusses the Commissioning Delays Claim in the submissions.

This suit followed, on October 9, 2020.  ECF 1.

## II.  Legal Standards

### A.  Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the

complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the

complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his

principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for

purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

As mentioned, the Motion is supported by one exhibit (ECF 7-2), which contains the Contract and the Terms. Both are integral to the Complaint and there is no dispute about the documents' authenticity. Therefore, I may consider them.

## B. Rule 9(b)

Both sides agree that Count IV, which lodges a claim for intentional misrepresentation, is subject to Fed. R. Civ. P. 9(b). *See* ECF 7-1 at 16; ECF 10 at 13.

Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See*, *e.g.*, *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (stating that a Maryland Consumer Protection Act claim that "sounds

in fraud, is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)");

*E-Shops Corp. v. U.S. Bank N.A.*, 678 F.3d 659, 665 (8th Cir. 2012) ("Rule 9(b)'s heightened

pleading requirement also applies to statutory fraud claims.").

Under Rule 9(b), a plaintiff alleging claims that sound in fraud "must, at a minimum,

describe the time, place, and contents of the false representations, as well as the identity of the

person making the misrepresentation and what he obtained thereby." *United States ex rel. Owens*

*v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) (quotation

omitted). In other words, "Rule 9(b) requires plaintiffs to plead the who, what, when, where, and

how: the first paragraph of any newspaper story." *Crest Construction II, Inc. v. Doe*, 660 F.3d

346, 353 (8th Cir. 2011) (quotation omitted).

Rule 9(b) serves several salutary purposes. In *Harrison v. Westinghouse Savannah River*

*Co.*, 176 F.3d 776, 784 (4th Cir. 1999), the Fourth Circuit identified four purposes (quoting *United*

*States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia,*

*Inc.,* 755 F.Supp. 1055, 1056–57 (S.D. Ga. 1990):

> First, the rule ensures that the defendant has sufficient information to formulate a
> defense by putting it on notice of the conduct complained of . . . . Second, Rule
> 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is
> to eliminate fraud actions in which all the facts are learned after discovery. Finally,
> Rule 9(b) protects defendants from harm to their goodwill and reputation.

However, the plain text of Rule 9(b) permits general averment of aspects of fraud that relate

to a defendant's state of mind. And, a "court should hesitate to dismiss a complaint under Rule

9(b) if the court is satisfied (1) that the defendant has been made aware of the particular

circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has

substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. Moreover, Rule

9(b) is "less strictly applied with respect to claims of fraud by concealment" or omission of material

facts, as opposed to affirmative misrepresentations, because "an omission 'cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'" *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997) (quoting *Flynn v. Everything Yogurt*, No. HAR-92-3421, 1993 WL 454355, at *9 (D. Md. Sept. 14, 1993)); *accord Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC 11–3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013).

### III. Discussion

As mentioned, the Terms require that any dispute arising under the Contract be adjudicated under Maryland law. ECF 7-2 at 7. And, both sides apply Maryland law. *See generally* ECF 7-1; ECF 10; ECF 13. Accordingly, I shall do so as well.

Ellicott argues that the plain language of the Terms precludes SumCo from recovering damages for breach of contract (Count I) and breach of express warranty (Count II). *See* ECF 7-1 at 9-13. As for negligent misrepresentation (Count III), defendant contends that SumCo could not have reasonably relied on defendant's alleged representation that assembly of the dredge would last no more than five days because the Terms "disclaim[]" any representations other than those included in the Terms. ECF 7-1 at 14. Moreover, in defendant's view, SumCo does not allege that defendant's representation regarding the required assembly time caused harm to SumCo. *Id.* at 15. Last, defendant asserts that Count IV is subject to dismissal under Rule 9(b) because SumCo does not allege intentional misrepresentation with particularity. *Id.* at 16.

### A. Contract Claims (Count I and II)

The first two counts sound in contract. The sufficiency of these claims turns on the meaning of various provisions in the Terms, as well as on whether Ellicott waived its contractual rights, as SumCo claims. *See* ECF 10 at 7.

**1.**

In general, a contract is defined as "a promise or set of promises for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." RICHARD A. LORD, 1 WILLISTON ON CONTRACTS § 1:1 (4th ed. 1990); *accord* RESTATEMENT (SECOND) CONTRACTS § 1 (1981); *see also Maslow v. Vanguri*, 168 Md. App. 298, 321, 896 A.2d 408, 421-22, *cert. denied*, 393 Md. 478, 903 A.2d 416 (2006). "'A contract is formed when an unrevoked offer made by one person is accepted by another.'" *Cty. Comm'rs for Carroll Cty. v. Forty W. Builders, Inc.*, 178 Md. App. 328, 377, 941 A.2d 1181, 1209 (2008) (quoting *Prince George's Cty. v. Silverman*, 58 Md. App. 41, 57, 472 A.2d 104, 112 (1984)). Thus, mutual assent is an integral component of every contract. *See, e.g.*, *Joseph Saveri Law Firm Inc. v. Michael E. Criden, P.A.*, 759 F. App'x 170, 173 (4th Cir. 2019) (recognizing as a "bedrock principle of law" that an offeree must accept an offer to form a contract); *Cochran v. Norkunas*, 398 Md. 1, 14, 919 A.2d 700, 708 (2007); *Advance Telecom Process LLC v. DSFederal, Inc.*, 224 Md. App. 164, 177, 119 A.3d 175, 183 (2015).

A contract may be oral or written, as well as express or implied. "'An express contract has been defined as an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing.'" *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 706, 114 A.3d 676, 688 (2015) (quoting *Cnty. Comm'rs of Caroline Cnty v. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94, 747 A.2d 600, 606 (2000)). Whether oral or written, a contract must express with certainty the nature and extent of the parties' obligations and the essential terms of the agreement. *Forty W. Builders, Inc.*, 178 Md. App. at 377-78, 941 A.2d at 1209-10; *see Canaras v. Lift Truck Services*, 272 Md. 337, 346, 322 A.2d 866, 871 (1974). If an agreement omits an important term, or is

otherwise too vague or indefinite with respect to an essential term, it is not enforceable. *Mogavero v. Silverstein*, 142 Md. App. 259, 272, 790 A.2d 43, 51 (2002); *see L & L Corp. v. Ammendale*, 248 Md. 380, 385, 236 A.2d 734, 737 (1967); *Schloss v. Davis*, 213 Md. 119, 123, 131 A.2d 287, 290 (1956) (stating that a "contract may be so vague and uncertain as to price or amount as to be unenforceable").

Here, there is no dispute that an enforceable contract between plaintiff and defendant was formed. Rather, the meaning of various provisions in the Terms is at issue.

In Maryland, the interpretation of a contract is "ordinarily a question of law for the court." *Grimes v. Gouldmann*, 232 Md. App. 230, 235, 157 A.3d 331, 335 (2017); *see Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 7, 98 A.3d 264, 268 (2014). In general, a court should enforce an unambiguous contract "'without regard to the consequences of that enforcement'" and without rewriting the terms. *Parkway 1046, LLC*, 961 F.3d at 307 (citation omitted).

When interpreting a contract, the "'cardinal rule . . . is to give effect to the parties' intentions.'" *Dumbarton Imp. Ass'n. Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 51, 73 A.3d 224, 232 (2013) (citation omitted). To do so, a court looks first to the written language of the contract. *Walton v. Mariner Health of Md., Inc.*, 391 Md. 643, 660, 894 A.2d 584, 594 (2006) ("[G]enerally, when seeking to interpret the meaning of a contract our search is limited to the four corners of the agreement."); *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assoc. Ltd. P'ship*, 109 Md. App. 217, 291, 674 A.2d 106, 142 (1996) ("[T]he court must, as its first step, determine from the language of the agreement what a reasonable person in the position of the parties would have meant at the time the agreement was effectuated."), *aff'd,* 346 Md. 122, 695 A.2d 153 (1997).

Maryland adheres to the law of objective interpretation of contracts, so that "'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties,

irrespective of the intent of the parties at the time they entered into the contract.'" *Sy-Lene of Wash., Inc. v. Starwood Urban Retail ll, LLC*, 376 Md. 157, 166, 829 A.2d 540, 545 (2003) (citation omitted); *see Cochran*, 398 Md. at 16, 919 A.2d at 709; *Huggins v. Huggins & Harrison, Inc.*, 220 Md. App. 405, 417, 103 A.3d 1133, 1139 (2014); *accord Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 306 (4th Cir. 2020). Thus, the court's task is not to imagine what the parties' intended at the time of the agreement but to "'determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated.'" *Dumbarton*, 434 Md. at 52, 73 A.3d at 232 (quoting *Gen. Motors Acceptance v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985)); *see Parkway 1046, LLC*, 961 F.3d at 307.

**2.**

Count I lodges a claim for "Breach of Contract."

"Generally, a breach of contract is defined as a 'failure, without legal excuse, to perform any promise that forms the whole or part of a contract.'" *Weaver v. ZeniMax Media, Inc.*, 175 Md. App. 16, 51, 923 A.2d 1032 (2007) (citing Williston on Contracts § 63:1). Under Maryland law, the elements of a claim for breach of contract are "'contractual obligation, breach, and damages.'" *Tucker v. Specialized Loan Servicing, LLC*, 83 F.Supp.3d 635, 655 (D. Md. 2015) (quoting *Kumar v. Dhanda*, 198 Md. App. 337, 17 A.3d 744, 749 (2011)); *see also RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 658, 994 A.2d 430, 442 (2010) (noting the elements of contractual obligation and breach); *Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 437 (D. Md. 2015) (same).

Further, in Maryland "a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing'" the existence, and the breach, of a contractual obligation. *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362, 36 A.3d 399, 416 (2012)

(emphasis in original) (citation omitted). The agreement, or alleged agreement, between the parties "ultimately determines" whether a breach occurred. *See Mathis v. Hargrove*, 166 Md. App. 286, 318-19, 888 A.2d 377, 396 (2005).

Ellicott first contends that Count I is untimely because SumCo filed suit after the contractual limitations period expired.

As mentioned, ¶ 8 of the Terms says that "[n]o action may be brought for any alleged breach by seller of these terms . . . more than 1 year after the purchase of equipment <u>or</u> rendering of service occurs." ECF 7-2 at 7 (capitalization removed; emphasis added). In Ellicott's view, the "purchase" of the dredge was made on September 18, 2019, when SumCo transmitted the $500,000 down payment to Ellicott. ECF 7-1 at 10. In addition, defendant asserts that the transmission of the down payment reflected that the parties "became bound by the Contract" on that date. ECF 13 at 5. Based on this view, Count I would be barred because SumCo filed suit on October 10, 2020, which was more than one year after September 18, 2019.

In Maryland, "contractually-shortened limitations periods, like the one at issue here, are valid only if (1) there is no statute to the contrary; (2) the provision is not the result of fraud, duress, misrepresentation, or the like; and (3) the provision is reasonable in light of all pertinent circumstances." *Ceccone v. Carroll Home Servs., LLC*, 454 Md. 680, 684, 165 A.3d 475, 477 (2017). SumCo does not contend that the limitations clause at issue here is invalid. Rather, it points out some conspicuous holes in defendant's logic. In particular, plaintiff asserts that after it made the $500,000 down payment, it still had not paid the vast majority—approximately $2.6 million—of the dredge's sticker price. *See* ECF 10 at 4. Thus, in plaintiff's view, the down payment did not constitute the "purchase."

This position is supported by basic principles of contract construction. Courts look first to plain meaning when interpreting a contract. *See Walton*, 391 Md. at 660, 894 A.2d at 594. To be sure, the plain meaning of "purchase" denotes something different than "down payment," *i.e.*, a deposit. Moreover, to "determine the plain meaning" of a contract, a court must "construe the contract as a whole." *Schneider Elec. Buildings Critical Sys., Inc. v. W. Sur. Co.*, 454 Md. 698, 706–07, 165 A.3d 485, 490 (2017). Here, the Complaint does not specify when the $2.6 million balance was paid. But, the section "Payment Terms" in the Contract states: "$500,000 due with order; balance payable . . . upon notification of readiness to ship." ECF 7-2 at 4. And, the Contract indicates that the dredge was to become available for shipping within four to six weeks of receipt of the down payment. *Id.* Presumably, then, SumCo did not pay the balance of the $3.1 million purchase price until sometime in mid-October 2019, and Ellicott shipped the dredge to Pennsylvania sometime after that.

But, even if Ellicott is correct that the date of the down payment—September 18, 2019— is the date of "purchase," that would not settle the matter. The Contract's limitations clause is disjunctive, providing that the one-year clock begins to run either upon "the purchase of equipment or [when] rendering of service occurs." ECF 7-2 at 7. As SumCo observes, nothing in the four corners of the Contact or the Terms offers any clue as to how to apply this provision. *See* ECF 10 at 4. Thus, this ambiguity must be "construed against the drafter" of the Contract. *Ray v. Credit Suisse First Bos. Corp.*, 200 F. Supp. 2d 532, 534 (D. Md. 2002); *see I.A. Const. Corp. v. Equiptec, Inc.*, 95 Md. App. 574, 580, 622 A.2d 206, 208 (1993).

Ellicott appears to have been the Contract's drafter. For one, the Contract appears on Ellicott's letterhead. *See* ECF 7-2 at 2-5. And, the Terms define Ellicott as "Seller" but do not specifically reference SumCo—rather, they define "any purchaser" as "Purchaser." ECF 7-2 at 6.

Accordingly, the ambiguity in the limitations clause must be construed against Ellicott, which means that the limitations clock began to run when the "rendering of service" occurred.

SumCo maintains that the "rendering of service" could have occurred when the dredge was delivered to SumCo, on November 21, 2019, or on December 3, 2019, when assembly of the dredge, under the supervision of Ellicott personnel, was completed. ECF 10 at 4 n.2. Either way, SumCo filed suit within the one-year limitations period.

Moving past limitations, Ellicott insists that, according to the Complaint, SumCo plainly failed to abide by the Terms' limitation on remedies. ECF 7-1 at 10-11. As discussed, ¶ 7 of the Terms provides that SumCo's "exclusive and sole remedy for any claim" under the Contract "shall be, in [Ellicott's] sole discretion, the repair or replacement of [the dredge] . . . or, as to Services, the re-performance of Services." *Id.* This restriction on remedies in reinforced in ¶ 8, which reiterates that SumCo's "sole remedy for any liability of [Ellicott] of any kind shall be limited to the remedy set forth in" ¶ 7. *Id.* (capitalization removed). According to defendant, the plain language of these provisions expressly prohibit SumCo from obtaining a judicial remedy for the dredge's defects or Ellicott's deficient service. *See* ECF 7-1 at 10-12.

Maryland law permits contractual limitations on remedies. Md. Code (2013 Repl. Vol.), § 2-719(1)(a) of the Commercial Law Article ("C.L.") is titled "Contractual modification or limitation of remedy." It provides that contracting parties may agree to "remedies in addition to or in substitution for those provided in this title and may limit or alter the measure of damages recoverable under this title, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts." *See Dowty Commc'ns Inc. v. Novatel Computer Sys. Corp.*, 817 F. Supp. 581, 589 (D. Md. 1992) (characterizing limitations on remedies agreed to by "sophisticated business entities" as

"presumptively valid"), *aff'd sub nom. Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390 (4th Cir. 1994). And, C.L. § 2-719(1)(b) establishes that where, as here, a contractual "remedy is expressly agreed to be exclusive," then "it is the sole remedy."[2] *See, e.g., Sun-Lite Glazing Contractors, Inc. v. J.E. Berkowitz, L.P.*, 37 F. App'x 677, 683 n.8 (4th Cir. 2002) (per curiam) (recognizing validity of "limited, exclusive remedy" under § 2-719).

SumCo does not genuinely challenge Ellicott's reading of the limitation on remedies established in ¶¶ 7 and 8 of the Terms. Rather, plaintiff contends: "Even if the language of the Contract could be interpreted in the way Ellicott wants, SumCo has alleged facts in its Complaint to suggest that Ellicott has waived strict adherence to the remedy provisions of the Contract." ECF 10 at 7. That is, plaintiff relies on the doctrine of waiver, sometimes referred to as modification.

"'Waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances.'" *Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 421 Md. 94, 122, 25 A.3d 967, 983 (2011) (citation omitted); *see Star Dev. Grp., LLC v. Darwin Nat'l Assurance Co.*, 813 F. App'x 76, 84 (4th Cir. 2020). In Maryland, a contract's terms may be waived or modified expressly by oral agreement or impliedly through conduct. *See Hovnanian* at 114-23, 25 A.3d at 979-84; *Universal Nat'l Bank v. Wolfe*, 279 Md. 512, 522 (1977) (discussing the "well settled rule" of Maryland law "that the parties by their conduct may waive the requirements of a written contract"); *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 88 (4th Cir. 2016) (discussing oral modification as well as modification by conduct). Moreover, Maryland law recognizes that a contract's provisions may be waived or modified even

---

[2] Neither side addresses C.L. § 2-719(2), which states: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in Titles 1 through 10 of this article."

if the contract purports to restrict the parties' ability to do so. *Hovnanian*, 421 Md. at 120, 25 A.3d at 982 ("[O]ur caselaw shows a persistent unwillingness to give dispositive and preclusive effect to contractual limitations on future changes to that contract."); *see Star Dev. Grp.*, 813 F. App'x at 84.

The waiver inquiry is fact intensive. Where, as here, the inquiry turns on the "'subsequent conduct of the parties,'" it is "generally a question of fact to be decided by the trier of fact.'" *Hovnanian*, 421 Md. at 122, 25 A.3d at 983 (citation omitted); *see Star Dev. Grp.*, 813 F. App'x at 85. In considering whether waiver or modification of a contract has occurred, courts "look to the totality of a party's actions." *Id.* Given the nature of this inquiry, "it is an uncommon case in which the issue can be resolved by summary judgment," let alone on a motion to dismiss. *Id.*

The gist of SumCo's waiver argument is that the Complaint permits the reasonable inference that Ellicott waived its right to enforce the contractual limitation on remedies. SumCo points to three supporting factual allegations. First, according to plaintiff, Ellicott personnel supervised the assembly and "start-up" of the dredge. ECF 10 at 7 (quoting ECF 1, ¶ 10). Second, during the period of a "few months" following assembly, plaintiff informed Ellicott in writing that plaintiff "was incurring costs to make necessary repairs" to the dredge. ECF 10 at 7 (quoting ECF 1, ¶ 23). Third, Ellicott "failed to make the necessary repairs," despite being informed of the dredge's defects. ECF 10 at 7 (citing ECF 1, ¶¶ 23, 24); *see* ECF 1, ¶ 28. The upshot of these allegations, in plaintiff's view, is that Ellicott knowingly opted not to enforce the contractual provisions that restrict SumCo's remedies to the repair or replacement of the dredge or the re-performance of services.

Ellicott counters that "none of these allegations" reflect that it acted in a manner that was "inconsistent with its right to limit SumCo's remedy under the Contract." ECF 13 at 7. However,

rather than discussing any legal authority concerning the waiver doctrine, Ellicott simply reiterates that, according to the Complaint, it was contractually obligated to provide technical support for, and supervision of, the assembly. ECF 13 at 7-8. And, defendant summarily asserts that its refusal "to make repairs when SumCo failed to follow the Contract's remedy procedure . . . is perfectly consistent with Ellicott enforcing its contractual rights to limit remedies." *Id.* at 8.

I am not persuaded. Under the Terms, repair or replacement of the dredge is the sole remedy available to SumCo for product defects. SumCo alleges that it notified Ellicott that the dredge had mechanical defects and that SumCo was paying to have repairs performed by someone other than Ellicott. *See* ECF 1, ¶ 23. Construing the Complaint in the light most favorable to plaintiff, as I must, it is reasonable to infer that Ellicott failed to take issue with SumCo's conduct, even though such conduct was inconsistent with the Contract. And, critically, SumCo alleges that Ellicott "fail[ed] to remedy those defects." *Id.* ¶ 28.

Ellicott's alleged "inaction or silence" might reasonably be taken as "inconsistent with an intention to insist upon enforcing" the contractual limitation on remedies. *Hovnanian*, 421 Md. at 122, 25 A.3d at 983-84. Moreover, the Maryland Court of Appeals has emphasized that the waiver analysis is properly for a fact-finder, and thus inappropriate to resolve on a motion to dismiss. *See id.* at 123, 25 A.3d at 984. *But see Myers v. Kayhoe*, 391 Md. 188, 206–07, 892 A.2d 520, 531 (2006) (reasoning that "no rational trier of fact could conclude" that a statement made by a buyer to a third party, which was never conveyed to the seller, constituted an implied waiver); *see Hovnanian*, 421 Md. at 124, 25 A.3d at 984 n.19 (discussing *Myers*).

This discussion of waiver leads to an important question — which, again, the parties do not address. Specifically, if SumCo has alleged sufficient facts to establish, at this stage, that Ellicott impliedly waived some of its contractual rights, which particular rights did Ellicott waive?

In other words, did Ellicott waive the right to enforce any provisions other than the limitation on remedies contained in ¶¶ 7 and 8 of the Terms? As it turns out, ¶ 12, titled "Waiver," speaks to this issue. That provision states, in pertinent part: "Any waiver by either [SumCo] or [Ellicott] of a breach by the other of any provision of these Terms . . . shall not be deemed a waiver of future compliance therewith, and all provisions shall remain in full force and effect." ECF 7-2 at 7. Put another way, the plain language of ¶ 12 acknowledges that if one party violates a particular provision of the Terms, the other party may waive its right to enforce that particular provision. But, the non-breaching party does not necessarily waive its right to enforce other provisions.

Therefore, even if Ellicott waived its right to enforce the contractual limitation on *remedies*, it did not automatically waive its right to enforce the contractual limitation on *liability*. As noted, ¶ 8 of the Terms states that defendant "shall only be liable for its own gross negligence or intentional misconduct." ECF 7-2 at 7 (capitalization removed). However, defendant does not discuss this provision or rely on it. Although SumCo clearly does not allege gross negligence, Count I arguably contains allegations of intentional misconduct. Under the circumstances, I discern no reason to dismiss Counts I and II on this basis.

**3.**

Count II, which lodges a claim for "Breach of Express Warranty," is virtually indistinguishable from Count I. Here, too, SumCo alleges that Ellicott violated the Terms "by failing to provide a [non-defective] dredge in conformity with the terms of the Contract" and "by failing to remedy those defects." ECF 1, ¶ 34.

"To state a claim for breach of express warranty under Maryland law, a plaintiff must allege '1) a warranty existed; 2) the product did not conform to the warranty; and 3) the breach

proximately caused the injury or damage.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 223 (4th Cir. 2009) (citation omitted).

Ellicott's arguments concerning Count II are bundled with its arguments as to Count I. *See* ECF 7-1 at 12.[3] Therefore, for the reasons stated above, I conclude that SumCo has stated a claim in Count II.

## B. Tort Claims (Counts III and IV)

Counts III and IV concern Ellicott's representation to SumCo regarding the assembly of the dredge. Although the length of assembly was not addressed in the Contract, plaintiff alleges that it discussed the issue with Ellicott in "multiple correspondence [sic] and discussions," in which "Ellicott represented that the assembly of the dredge, after delivery to the dry-dock, would take five (5) days in a 'worst Case' scenario." ECF 1, ¶ 16. Accordingly, SumCo relied on that representation. *Id.* ¶¶ 16, 44, 53.

Despite Ellicott's representation, assembly allegedly took thirteen days and cost $35,000 more than plaintiff anticipated, as a result of "additional dry-dock fees and labor costs." *Id.* ¶ 19; *see id.* ¶¶ 18, 45, 54. In Count III, which lodges a claim for negligent misrepresentation, plaintiff asserts that "Ellicott failed to act with reasonable care to ascertain" the truth of its representation regarding the length of assembly, and that Ellicott knew that plaintiff would likely rely on the representation. *Id.* ¶ 42. In Count IV, plaintiff asserts that Ellicott made the representation concerning the time needed to assemble the dredge with knowledge of its falsity and for "the purpose of inducing SumCo to act" on it. *Id.* ¶ 52; *see id.* ¶ 51.

---

[3] In the Motion, Ellicott seems to contend that the limitations clause in the Contract bars only Count I. *See* ECF 7-1 at 9-10. But, in its reply, defendant asserts that the limitations bar applies to both Count I and II. ECF 13 at 4. In any event, the limitations argument is unavailing, as discussed, *supra*.

**1.**

The "tort of negligent misrepresentation is generally rooted in negligence . . . ." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 137, 916 A.2d 257, 274 (2007). To state a claim for negligent misrepresentation under Maryland law, a plaintiff must allege, *id.* at 135, 916 A.2d at 273 (citation and internal quotation marks omitted):

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

As to what constitutes a false statement, which is central to the first element, "Maryland law distinguishes between statements that relate to material facts—which may give rise to cognizable claims—and vague generalities, statements of opinion, or puffery—which are deemed non-cognizable." *Baney Corp. v. Agilysis NV, LLC*, 773 F. Supp. 2d 593, 608 (D. Md. 2011); *see Anne Arundel Cty. v. Xerox State & Local Sols., Inc.*, JFM-16-0563, 2016 WL 5720705, at *6 (D. Md. Sept. 30, 2016); *Daniyan v. Viridian Energy LLC*, GLR-14-2715, 2015 WL 4031752, at *3 (D. Md. June 30, 2015). Vague and exaggerated statements cannot support a negligent misrepresentation claim "'because they should, as a general rule, put the hearer upon inquiry, and there is no right to rely upon such statements.'" *Goldstein v. Miles*, 159 Md. App. 403, 436, 859 A.2d 313, 332 (2004) (citation omitted). For instance, in *Milkton v. French*, 159 Md. 126, 150 A. 28 (1930), the Maryland Court of Appeals determined that a seller who represented to a potential home buyer that a building was "perfectly safe on the concrete, roof and everything else of the construction" was not liable for fraud, because the claim of perfect construction "was so extravagant in scope and measure and so indefinite and elusive in meaning that the statement would fall within the category of a puff instead of a representation." *Id.* at 31, 150 A. 28.

For purposes of negligent misrepresentation, a false statement also excludes promissory representations—that is, statements by a party about its future conduct. Such statements might be actionable for fraud, but they do not give rise to a claim for negligent misrepresentation. *See All Med. Pers., Inc. v. Ameritox, LLC*, CCB-18-1527, 2018 WL 5810866, at *2 (D. Md. Nov. 6, 2018) ("While a promissory representation made with an existing intention not to perform is actionable for fraud . . . such a representation is not actionable for negligent misrepresentation.") (internal citations and quotation marks omitted); *see also Orteck Int'l Inc. v. TransPacific Tire & Wheel, Inc.*, DKC 2005-2882, 2006 WL 2572474, at *20 (D. Md. Sept. 5, 2006) ("To the extent that a party making the representation about its future conduct knows at the time the statement is made that it is false, the [negligent misrepresentation] claim converts to one of *fraudulent* misrepresentation.") (emphasis in original).

Although Ellicott generally "contests many of SumCo's factual allegations," it asserts that, even accepting the factual allegations in the Complaint as true, the Complaint does not satisfy the fourth and the fifth elements of negligent misrepresentation, namely, reasonable reliance and damages proximately caused by Ellicott. ECF 7-1 at 14. With respect to reliance, defendant's position is, in essence, that SumCo's reliance was not reasonable as a matter of law because the time required for assembly was not addressed in the written Contract or the Terms, and the integration clause in ¶ 6 of the Terms disclaims extra-contractual warranties. *See id.*

The integration clause in the Terms does not defeat SumCo's claim for negligent misrepresentation. As observed in *Carroll Co. v. Sherwin-Williams Co.*, 848 F. Supp. 2d 557, 568 (D. Md. 2012) (quoting *Greenfield v. Heckenbach*, 144 Md. App. 108, 139, 797 A.2d 63, 81 (2002) (cleaned up)):

> Maryland law clearly states that a plaintiff can successfully bring a tort action for
> fraudulent or negligent misrepresentation based on false promises even if the

written contract contains general merger language and the alleged false promises are not mentioned in the written contract. . . . This . . . prevents sellers from hiding behind integration clauses "to avoid the consequences of misrepresentation, whether fraudulent or negligent."

*See also Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 338, 439 A.2d 534, 539 (1982).

Further, the cases on which Ellicott draws in support of its reliance argument are distinguishable. As SumCo points out, these cases address reliance in the context of a different cause of action — promissory estoppel. But, as with negligent misrepresentation, reasonable reliance is an element of promissory estoppel. *see, e.g.*, *D & G Flooring, LLC v. Home Depot U.S.A., Inc.*, 346 F. Supp. 2d 818, 823 (D. Md. 2004). What renders the cases meaningfully inapposite is their facts.

One of the cases Ellicott discusses is *D & G Flooring, LLC v. Home Depot U.S.A., Inc.*, 346 F. Supp. 2d 818 (D. Md. 2004). *See* ECF 7-1 at 14. D & G, the plaintiff and a "flooring installation business," contracted with Home Depot to install carpet sold at Home Depot stores. *Id.* at 820. The contract explicitly provided that D & G was not Home Depot's exclusive Baltimore-area carpet installer. *Id.* However, D & G alleged that, thereafter, Home Depot orally proposed making its relationship with D & G exclusive. *Id.* at 820-21. In reliance on the proposal, D & G "expand[ed] its facilities, hire[d] new staff, and purchase[d] new equipment." *Id.* at 821. D & G and Home Depot executed a new written contract, which did not "include an expression of an exclusivity agreement." *Id.* Home Depot subsequently withdrew all of its business from D & G. *Id.*

The district court concluded that D & G failed to state a claim for promissory estoppel because its reliance on Home Depot's oral promise regarding exclusivity was unreasonable as a matter of law. *Id.* at 823-24. In particular, the court noted that the alleged oral promise was "directly contradict[ed]" by the written contract "executed the same day as the promise was

allegedly made." *Id.* at 824. Further, the court reasoned: "It is unfathomable that a business entity with millions of dollars in annual revenues would not require that a *fundamental change* in one of its most profitable business relationships be expressed in a writing. This is particularly true where the business has knowledge that the conditions of its new relationship directly conflict with the terms of its prior relationship." *Id.* (emphasis added).

In contrast to *D & G*, the oral representation at issue here regarding the time required for assembly of the dredge is not contradicted by the written contract. Nor did it "directly conflict" with any prior dealings between the parties. *D & G Flooring, LLC*, 346 F. Supp. 2d at 824. And, SumCo does not allege that it made any fundamental changes to its business as a result of Ellicott's representation, on par with hiring new staff and greatly expanding capacity. Rather, SumCo simply alleges that it budgeted for five days' worth of assembly, and then had to spend some $30,000 over budget because it took an additional eight days to complete the assembly. For substantially these reasons, then, Ellicott's citation to *G & M Oil Co. v. Glenfed Fin. Corp.*, 782 F. Supp. 1085 (D. Md. 1991), *aff'd sub nom. G & M Oil Co. v. Glenfed Fin. Corp.,* 947 F.2d 940 (4th Cir. 1991), which remarked that "sophisticated business entities don't enter into multimillion dollar transactions without a comprehensive writing," is similarly unavailing. That observation would be appropriate for a factfinder to consider, but it does not lead to the conclusion that plaintiff failed to state a claim.

In addition, Ellicott invokes *Heritage Oldsmobile-Imports v. Volkswagen of Am., Inc.*, 264 F. Supp. 2d 282, 290 n.9 (D. Md. 2003), for the proposition that it is unreasonable as a matter of law for a "'sophisticated party' to rely on a promise that was unenforceable." ECF 7-1 at 14. However, this citation might only be helpful for Ellicott *if* SumCo's reliance on Ellicott's alleged representation regarding assembly is unenforceable—that is, unreasonable—as a matter of law.

Neither *Heritage Oldsmobile-Imports*, which dealt with the statute of frauds, nor any other case mentioned by defendant, permits me to conclude, at this juncture, that plaintiff's reliance was unreasonable. Reasonable reliance is a notoriously "slippery" concept and typically requires a fact-sensitive inquiry. *Parker v. Columbia Bank*, 91 Md. App. 346, 361, 604 A.2d 521, 528 (1992).

Given the posture of the case, I cannot say that SumCo's reliance on the alleged extra-contractual representation was unreasonable as a matter of law. But, in regard to reasonable reliance, the fact-finder certainly could consider whether plaintiff is a sophisticated business, as well as the merger language in the contract and the omission from the contract of any term consistent with the alleged misrepresentation. *See Carroll Co.*, 848 F. Supp. 2d at 568 (determining that, on a motion to dismiss, it was premature for the Court to resolve the question of plaintiff's reliance on an oral, extra-contractual representation, but noting that the contract's merger language "may be a factor the jury to consider at trial" regarding reasonableness); *cf. Hood-Wilson v. Cmty. Coll. Balt. Cnty.*, ___ Fed. App'x. ___, 2021 WL 2589054, at *1 (4th Cir. June 24, 2021) (per curiam) (cautioning that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely").

As to the fifth element of negligent misrepresentation, the gist of Ellicott's argument is that SumCo does not sufficiently allege that it was harmed by Ellicott's statements regarding the assembly period. According to Ellicott, to state a claim for negligent misrepresentation, plaintiff must explicitly allege that it would not have contracted with Ellicott had it known that assembly would actually take thirteen days, rather than five days, as represented by Ellicott. ECF 13 at 9-10. Ellicott does not identify any relevant legal authority. *See id.*; ECF 7-1 at 15.

In my view, defendant's reading of the Complaint is overly restrictive. Plaintiff alleges that it "understood" from Ellicott's representations that assembly would require no more than five days, ECF 1, ¶ 16, and that the extended assembly period resulted in "over-run costs exceeding $35,000, including additional dry-dock fees and labor costs." *Id.* ¶ 19. As discussed, I must draw all reasonable inferences from the factual allegations in plaintiff's favor. *See DeMasters*, 796 F.3d at 416. Accordingly, it is reasonable to infer from the Complaint that plaintiff based its project planning and budgeting, at least in part, on Ellicott's alleged representation, which turned out to be incorrect. Moreover, for purposes of negligent misrepresentation, "economic losses qualify as a cognizable injury." *Lloyd*, 397 Md. at 137, 916 A.2d at 274; *see also Dynacorp Ltd. v. Aramtel Ltd.*, 208 Md. App. 403, 447, 56 A.3d 631, 657 (2012) (recognizing that "a victim of fraudulent or negligent misrepresentation may elect to recover 'out-of-pocket' expenses or 'benefit-of-the-bargain' damages").

To be sure, an extra eight days of assembly is a far cry from, say, an extra eight months. Nevertheless, on the basis of these factual allegations, the fifth element of the claim is satisfied. Therefore, I conclude that SumCo has stated a claim for negligent misrepresentation.

**2.**

Count IV contains a claim for intentional misrepresentation. At the outset, I note that Count IV is pleaded in the alternative to Count III. *See Martens Chevrolet*, 292 Md. at 337, 439 A.2d at 539 ("Nothing prohibits a plaintiff from pleading both deceit and negligent misrepresentation in one declaration and then relying on the same nucleus of facts in an attempt to satisfy the differing burdens of proof on these alternative claims."); *see also* Fed. R. Civ. P. 8(d)(2).

"In Maryland, the terms 'fraud' . . . and 'intentional misrepresentation'[] are often used interchangeably, and the elements necessary to establish intentional misrepresentation are identical

to those required for fraud." *Simms v. Mut. Benefit Ins. Co.*, 137 F. App'x 594, 600 (4th Cir. 2005) (alterations added); *see B.N. v. K.K.*, 312 Md. 135, 149, 538 A.2d 1175, 1182 (1988) (referring to the tort "variously known as fraud, deceit, or intentional misrepresentation"); *see also In re Reecher*, 514 B.R. 136, 155 (Bankr. D. Md. 2014) (stating that "intentional misrepresentation" is "also known in Maryland simply as fraud or deceit"). Thus, Count IV is subject to Rule 9(b)'s particularity requirement, as indicated.

To state a claim for intentional misrepresentation, a plaintiff must plausibly allege: "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Nails v. S & R, Inc.,* 334 Md. 398, 415, 639 A.2d 660, 668 (1994); *see Thomas v. Nadel*, 427 Md. 441, 451 n.18, 48 A.3d 276, 282 n.18 (2012); *Gourdine v. Crews*, 405 Md. 722, 758, 955 A.2d 769, 791 (2008); *Sass v. Andrew*, 152 Md. App. 406, 429, 832 A.2d 247, 260 (2003).

To be actionable, a false representation "must be of a material fact." *Gross v. Sussex, Inc.*, 332 Md. 247, 258, 630 A.2d 1156, 1161 (1993). "A 'material' fact is one on which a reasonable person would rely in making a decision," *Sass*, 152 Md. App. at 430, 832 A.2d at 260, or a fact that "'the maker of the misrepresentation knows . . . [the] recipient is likely to regard . . . as important.'" *Gross*, 332 Md. at 258, 630 A.2d at 1161 (citation omitted).

Ordinarily, intentional representation cannot be predicated on statements that are merely "'expressions as to what will happen in the future.'" *Sass*, 152 Md. App. at 438, 832 A.2d at 265 (citation omitted); *see Highlands Office Park Three, LLC v. GE Commercial Fin. Bus. Prop. Corp.*,

WDQ-08-2972, 2009 WL 10682225, at *4, n.7 (D. Md. Feb. 25, 2009); *Cooper v. Berkshire Life Ins. Co.*, 148 Md. App. 41, 73, 810 A.2d 1045, 1064 (2002).  However, Maryland cases distinguish "between statements that are 'a prediction or an expression of expectation concerning external events' and those that are 'relate[d] to matters within the speaker's control.'"  *Carroll Co.*, 848 F. Supp. 2d at 569 (citation omitted) (alteration in *Carroll*).  Therefore, a predictive statement by a speaker who holds himself out as "knowledgeable in a particular field" can support a claim of fraud "where the circumstances indicate . . . that the speaker has a factual basis for his predictions so that the existence of facts is implied by the representations."  *Cooper*, 148 Md. App. at 73-74, 810 A.2d at 1064 (citation omitted); *see also Hale Trucks of Md., LLC v. Volvo Trucks North Am., Inc.* 224 F. Supp. 2d 1010, 1031-32 (D. Md. 2002).  Further, as with negligent representation, vague, indefinite, conjectural, and exaggerated statements, along with puffing, do not give rise to a claim of intentional misrepresentation.  *See Goldstein*, 159 Md. App. at 436, 859 A.2d at 332; *Fowler v. Benton*, 229 Md. 571, 579, 185 A.2d 344, 349 (1962).

Ellicott argues that Count IV does not contain sufficient particularity to survive review under Rule 9(b).  I agree.  There is no factual basis in the Complaint to support a claim of fraud.  SumCo does not "plead 'the time . . . of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019) (citation omitted).

In particular, the Complaint does not reflect when Ellicott made the false representations regarding assembly of the dredge.  *See* ECF 1, ¶ 16.  Although plaintiff alleges generally that it was engaged in negotiations with Ellicott regarding the dredge "in the summer and fall of 2019," *id.* ¶ 41, the Complaint does not specify when the representations regarding assembly were conveyed.  *See Am. BioCare Inc. v. Howard & Howard Att'ys Pllc*, 702 F. App'x 416, 422 (6th

Cir. 2017) (fraud was not pleaded with particularity because the pleading failed "to give even one date on which an alleged misrepresentation occurred"). In addition, the Complaint does not indicate who from Ellicott made the representations at issue. *See Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 898 (8th Cir. 2014) (dismissing a fraudulent misrepresentation claim because the pleading did not identify the "representatives" of the entity defendant who "engaged in the alleged misrepresentations"). Perhaps most important, there is not a single allegation that supports a claim that the representation was made with the intent to mislead plaintiff.

Therefore, I conclude that SumCo has failed to state a claim in Count IV.

## C. Leave to Amend

SumCo's opposition includes a blanket request for leave to amend, pursuant to Fed. R. Civ. P. 15(a)(2), in the event the Court finds any of SumCo's claims to be deficient. ECF 10 at 14.

In general, requests for leave to amend are governed under "the liberal standard of Fed. R. Civ. P. 15(a)." *Humane Soc'y of the United States v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, DKC-13-1822, 2016 WL 3668028, at *2 (D. Md. July 11, 2016); *see Cook v. Howard*, 484 Fed. App'x 805, 814-15 (4th Cir. 2012); *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *Wonasue v. Univ. of Maryland Alumni Ass'n*, 295 F.R.D. 104, 106-07 (D. Md. 2013). Under Rule 15(a), a court should deny leave to amend in three circumstances: "'when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile.'" *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019) (quoting *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010)); *see Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 121 (4th Cir. 2013); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

I recognize that in its reply, Ellicott does not respond to plaintiff's request for leave to amend. *See Stenlund v. Marriot Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (reasoning similarly). However, the fraud claim appears patently specious. The inclusion of the claim in the Complaint has already burdened the Court. Devoting additional judicial resources to the resolution of a reincarnated version of this claim would be contrary to judicial economy. Therefore, I shall deny plaintiff leave to amend to cure the deficiencies in Count IV.

## IV. Attorney's Fees

Ellicott asks for reasonable attorney's fees and costs, pursuant to ¶ 13 of the Terms. *See* ECF 7; ECF 7-2 at 7. Given that three of the four counts in the suit survive the Motion, it is premature to issue any such award.

## V. Conclusion

For the foregoing reasons, I shall grant the Motion (ECF 7) in part and deny it in part.

An Order follows.

Date: June 28, 2021

_____/s/_____
Ellen L. Hollander
United States District Judge